IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CATHERYNNE W. KENDRICK;
RAY YOUNGBLOOD KENDRICK;
JERRY TRACKE; and
LIONELL NAVARRETTE                                                    PLAINTIFFS

      v.                              Civil No. 08-5242

KAREN ROSE ARDNT, Adoptive Parent;
JOHN DAVID DUTCHER, Judge;
M. BROWN, Agent, Federal Bureau of
Investigation; M. BLAIR, Agent, Federal
Bureau of Investigation; JOHN DOES 1-3, Deputy,
United States Marshal; JOHN DOE, Deputy,
Benton County Sheriff's Office; JANE DOE,
Century Tel Records Department; JOHN DOES 1-2,
Investigators, Social Security Administration;
MICHAEL SCOTT, Probation Officer, United
States Probation Officer; and BEVERLY
STITES JONES, United States Magistrate Judge              DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Catherynne W. Kendrick (Kendrick) filed this civil rights action. She proceeds *pro se* and *in forma pauperis*. The case is before me for a determination of whether service of process should issue.

### Background

Kendrick filed this action on behalf of herself and three others, Ray Youngblood Kendrick (date of birth 11/8/2000) and Jerry Tyackle Kendrick (date of birth 11/1/2001), both individuals she refers to as her "sons" and also alleges were in her "foster care" and "custody"

from April 10, 2003, until March 11, 2005, and Lionel Navarrette (Navarrette), who she indicates is the "biological father."

Kendrick's complaint is voluminous, consisting of thirty-one pages, and at times difficult to follow. According to the allegations of the complaint, Navarrette was in prison from August of 1991 through February of 2004. It appears that Navarrette had a son by the name of Lyle Fred Navarrette.

Between March 15, 2002, and September 30, 2003, Kendrick asserts Karen Rose Ardnt made constant death threats against her over the phone. Kendrick maintains Ardnt was attempting to extort money to care for Arndt's son Lyle Fred Navarrette.

Kendrick alleges the Benton County Sheriff's Office refused to do anything about the threats. Kendrick "charges" Ardnt with endangering the welfare of minors in the first degree under Ark. Code Ann. § 5-27-205. Furthermore, she maintains Ardnt made a false report to the Socials Security Administration Investigation Division in Little Rock and to the Federal Bureau of Investigation (FBI) in Fayetteville alleging that Kendrick had threatened her.

Kendrick indicates Ardnt, who is her half-sister, adopted "her son" in August of 2006 and that Judge John David Dutcher presided over the "custody case." Kendrick states while her son's name was changed, apparently to Michael Ardnt, his social security number remained the same. She states she was told by Judge Dutcher that as the biological mother she could run a tracer by the social security number to find her son when he turned eighteen in October of 2008.

Despite the adoption, Kendrick contends Ardnt unlawfully continued to collect benefits from the Social Security Administration on the child. Kendrick maintains these funds need to be repaid.

-2-

Kendrick also maintains the Federal Bureau of Investigation (FBI) refused to do anything until after "the crime" took place. She maintains they refused to check her phone bill to verify the number of times Ardnt called Kendrick's home between April 1, 2002, and April 27, 2002. Kendrick alleges this occurred on forty-seven occasions causing her sons, Ray and Jerry, to have nightmares.

On April 22, 2002, the FBI, Benton County Sheriff's Office, and the U.S. Marshals came to Kendrick's home and arrested her. Kendrick asserts she had only made one call to Idaho and left a message on Ardnt's phone stating she would come to Idaho and take back what was rightfully hers; Ardnt would not be receiving any more money from her; and that Ardnt should quit threatening her children. Kendrick maintains she was unfairly prosecuted while no charges were brought against Ardnt.

The court's records indicate that on May 1, 2002, a one count indictment was filed in this district charging Kendrick with threat by interstate communications in violation of 18 U.S.C. § 875(c). *United States v. Kendrick*, 02-cr-50009-01. Kendrick plead guilty on July 3, 2002, and on November 8, 2002, was sentenced to ten months in prison, three years of supervised release, and a $100 special assessment (Doc. 27). United States Magistrate Judge Beverly Stites Jones presided over Kendrick's initial appearance and entered an order of detention.

With respect to Michael E. Scott, Kendrick alleges in the presentence report he unfairly jumped to the conclusion she was guilty of the hot check charge. Further, she maintains he denied her a court hearing, caused her to serve additional time on her sentence, and caused her to have additional fines imposed.

**Discussion**

As part of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, signed into law on April 26, 1996, section1915, which governs proceedings filed in forma pauperis, was amended in an effort to address concerns about, and reduce the number of, frivolous prisoner initiated lawsuits. 28 U.S.C. § 1915. Prior to the PLRA's amendments to § 1915, a prisoner who attained *in forma pauperis* status was exempted from paying court fees. After the enactment of the PLRA, prisoners granted IFP status are required to pay the filing fee although it may be paid in installments. 28 U.S.C. § 1915(b).

The PLRA also added subsection 1915(g) which limits the ability of a prisoner, who has filed at least three claims that have been dismissed as frivolous, malicious, or failing to state a claim, to obtain *in forma pauperis* status. Specifically, § 1915(g) provides that:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action . . . in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This provision has commonly become known as the "three strikes rule" or the "three strikes provision" and has withstood constitutional challenges. *See e.g., Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999).

Since the filing of the instant action, it has come to the court's attention that, among the numerous actions filed by Kendrick in this court, she has at least three previous actions that qualify as strikes against him under section 1915(g). *See e.g., Pryor-Kendrick v. Clinger, et al.,* Civil No. 06-5197 (dismissed as frivolous on 12/14/2006); *Pryor-Kendrick v. Gunn, et al.,* Civil

AO72A
(Rev. 8/82)

No. 06-5196 (dismissed as frivolous on 12/8/2006); *Pryor-Kendrick v. Keith, et al.,* Civil No. 06-5195 (dismissed as frivolous on 10/11/2006); *Pryor-Kendrick v. Newton, et al.,* Civil No. 05-5177 (dismissed as frivolous on 12/2/2005).

Kendrick is not currently under imminent danger of serious physical injury. *Cf. Ashley v. Dilworth,* 147 F.3d 715, 717 (8th Cir. 1998) (finding allegations of ongoing danger sufficient where prisoner specified two incidents where he had suffered harm and allegations were supported by documentary evidence, including corroborative prisoner disciplinary reports). Therefore, Kendrick is not eligible for IFP status.

This case is also subject to dismissal because it is frivolous. First, Kendrick may not assert claims on behalf of the other three plaintiffs she has named. A claim that an individual's constitutional rights have been violated is regarded as personal in nature. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610-11, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); *United States v. Mitchell,* 915 F.2d 521, 526 n. 8 (9th Cir. 1990). Ordinarily, one individual cannot assert a claim on behalf of another individual. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)("While a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'").

Second, to the extent Kendrick seeks to bring criminal charges against the defendants, the claims fail. A private citizen has no right to institute criminal prosecution. *See Diamond v. Charles,* 476 U.S. 54, 64-65, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986); *In re Kaminski,* 960 F.2d 1062, 1064 (D.C. Cir. 1992) (private party lacks judicially cognizable interest in prosecution of another person); *Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990); *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989).

**AO72A**
**(Rev. 8/82)**

Third, to the extent Kendrick brings claims based on the alleged failures of various officers or agencies of the State, County, or the United States to faithfully execute their duties of office and to uphold their oath of office thereby depriving her of her rights, the claims are subject to dismissal. These generalized allegations are simply insufficient to state a claim. *See e.g., Johnson v. Reagan*, 524 F.2d 1123, 1124 (9th Cir. 1975).

Fourth, Ardnt is a private individual. A § 1983 complaint must allege that each defendant, acting under color of state law, deprived plaintiff "rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A private individual who complains of criminal conduct and is a witness for the prosecution does not act under color of law. *See e.g., Grow v. Fisher*, 523 F.2d 875, 879 (7th Cir. 1975)("The mere fact that the individual defendants were complainants and witnesses in an action which itself was prosecuted under color of law does not make their complaining or testifying other that what it was, *i.e.,* the action of private persons not acting under color of law."); *Rodgers v. Lincoln Towing Service, Inc.*, 596 F. Supp. 13, 21 (N.D. Ill. 1984), *aff'd*, 771 F.2d 194 (7th Cir. 1985)(A private citizen does not act under color of law when reporting a crime). Ardnt cannot be sued under § 1983 because she is a private citizen, not acting under color of state law. Moreover, to the extent Kendrick seeks to sue her because she gave evidence against Kendrick in a criminal matter, Ardnt would be absolutely immune as witnesses in a criminal proceeding. *Briscoe v. LaHue*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983)(A witness at trial has absolute immunity from suit under § 1983 for giving false testimony damaging to a subject of that testimony).

Fifth, John David Dutcher and United States Magistrate Judge Beverly Stites Jones are immune from suit. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages."). *See also Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir. 1994). "Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).

Judicial immunity is overcome in two situations: (1) if the challenged act is nonjudicial; and (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11. It is clear from the allegations of the complaint that neither situation applies here.

In the past, claims for declaratory and injunctive relief "have been permitted under 42 U.S.C. § 1983 against judges acting in their official capacity." *Nollet v. Justices of Trial Court of Com. of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000), *aff'd without op.,* 248 F.3d 1127 (1st Cir. 2000)(*citing Pulliam v. Allen,* 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984)). "However, in 1996 Congress passed the Federal Courts Improvement Act ("FCIA"), Pub. L. No. 104-317, Title III § 309(c), 110 Stat. 3847, 3853, which legislatively reversed *Pulliam* in several important respects." *Nollet*, 85 F. Supp. 2d at 210. As amended by the FCIA § 1983 now precludes injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Kendrick does not allege that either of these prerequisites for injunctive relief are met. *See e.g., Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)(holding injunctive relief against a quasi-judicial official is barred if the plaintiff fails to allege a violation of a declaratory decree or the unavailability of declaratory relief); *Fox v. Lee*, 99 F. Supp. 2d 573, 575-576 (E.D. Pa. 2000)(claim for injunctive relief dismissed where plaintiff's complaint fails to allege that either of the prerequisites to injunctive relief were met); *Ackermann v. Doyle*, 43 F. Supp. 2d 265, 273 (E.D. N.Y. 1999)(dismissing action against judicial officers because plaintiff failed to allege that a declaratory decree was violated or the declaratory relief was unavailable). Thus, to the extent Kendrick seeks injunctive relief her claims are subject to dismissal.

Furthermore, to be entitled to equitable relief, "plaintiff must show that he has an inadequate remedy at law and a serious risk of irreparable harm." *Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1392 (9th Cir. 1987)(citations omitted). Equitable relief is not appropriate where an adequate remedy under state law exists. *Pulliam,* 466 U.S. at 542 & n. 22, 104 S. Ct. at 1981 & n. 22. *See also Sterling v. Calvin* , 874 F.2d 571, 572 (8th Cir. 1989). An adequate remedy at law exists when the acts of the judicial officer can be reviewed on appeal or by extraordinary writ. *Mullis*, 828 F.2d at 1392 (citation omitted). *See also Nelson v. Com*, 1997 WL 793060, 2 (E.D. Pa. 1997)(appellate review of conviction provides plaintiff an adequate remedy under state law). *See also J&M Mobile Homes, Inc. v. Hampton*, 347 Ark. 126, 60 S.W.3d 481 (2001)(discussing when a writ of prohibition is appropriate).

Sixth, Kendrick's claims against Michael Scott, a United States Probation Officer are subject to dismissal. A probation officer in preparing a presentence report is entitled to absolute immunity because the act of preparing the presentence report is so closely associated with the

AO72A
(Rev. 8/82)

exercise of a judicial function. *See eg. Peay v. Ajello*, 470 F.3d 65 (2d Cir. 2006)(absolute immunity for probation officer's preparation and submission of presentence report); *Anton v. Getty,* 78 F.3d 393 (8th Cir. 1996)(probation officer entitled to absolute immunity in preparing report on whether release plan was acceptable and in recommending parole be delayed stating the actions were similar to those of a probation officer preparing a presentence report which are so closely associated with the exercise of judicial function); *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir. 1984)(probation officers receive immunity in preparing presentence investigation reports).

Seventh, the events Kendrick complains about occurred more than three years before the filing of this complaint and are barred by the applicable statute of limitations. A three year statute of limitations applies to § 1983 actions and to *Bivens*[1] actions. *See Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)(in § 1983 actions courts should apply the state statute of limitations applicable to personal injury torts); *Sanchez v. United States*, 49 F.3d 1329 (8th Cir. 1995)(*Bivens* actions are governed by the same statute of limitations as section 1983 actions); *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir.1992) (personal injury action in Arkansas governed by three-year statute of limitations); *Morton v. City of Little Rock*, 934 F.2d 180, 183 (8th Cir.1991) (statute of limitations in Arkansas for § 1983 action is three years).

---

[1] In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) the Supreme Court held that when "a federal agent acting under color of his authority" violates the Constitution the agent's victim may recover damages against the agent.

AO72A
(Rev. 8/82)

### Conclusion

Accordingly, I recommend that Kendrick's IFP status be revoked pursuant to 28 U.S.C. § 1915(g). Further, I recommend that this case be dismissed on the grounds that the claims are frivolous and fail to state claims upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(I)-(iii)(IFP action may be dismissed on such grounds at any time).

In addition, Kendrick should be precluded from filing any future civil action IFP unless she is under imminent danger of serious physical injury. It is therefore recommended that the following order be entered:

> The clerk of this court is directed to provisionally file any new action in which Catherynne W. Kendrick seeks to proceed IFP. The magistrate judge shall then review the action and, if it is a civil action, rather than a criminal or habeas one, and, if Kendrick has not asserted a valid claim that she is under imminent danger of serious physical injury, the magistrate judge shall recommend that IFP status be denied.

**Kendrick has ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Kendrick is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of March 2009

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)